**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MARILYN MCCLAIN GOFF, | ) |
| | ) |
| Plaintiff. | ) |
| | ) |
| vs. | ) |
| | ) |
| SHEREE L. HUKILL; | ) |
| DR. JOE A. WILEY; | ) Case No. 08-CV-71-TCK-FHM |
| STATE OF OKLAHOMA, ex rel. | ) |
| BOARD OF REGENTS OF THE | ) |
| UNIVERSITY OF OKLAHOMA, | ) |
| CAMERON UNIVERSITY, and | ) |
| ROGERS STATE UNIVERSITY; TOM | ) |
| VOLTURO; KRISTI KIRKES; MARK | ) |
| MEADORS; and MICHAEL TURNER, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss (Doc. 34).

**I.     Background**

Plaintiff alleges she was employed by Defendant State of Oklahoma, *ex rel.* Board of Regents of the University of Oklahoma, Cameron University, and Rogers State University ("University") until she was wrongfully terminated from her employment. Plaintiff initially brought suit against Defendants University,[1] Dr. Joe A. Wiley ("Wiley"), and Sheree L. Hukill ("Hukill") on January 14, 2008 in the District Court of Rogers County ("Rogers County") ("Original Petition"). Three days later, Plaintiff filed a First Amended Petition in Rogers County against University, Wiley, and Hukill.

---

[1] Plaintiff's original Petition improperly identified University as "Rogers State University Board of Regents." The amended versions of Plaintiff's petition properly identified University.

On January 23, 2008, Plaintiff sent the Original Petition and summons via certified mail/return receipt to Defendants University, Wiley, and Hukill. With regard to University, the Petition and summons were addressed to "Roger State University, Attn: Dr. Joe Wiley, President" at 1701 W. Will Rogers Blvd. Claremore, OK 74017 ("University Claremore Address"). (*See* Return Receipts, Ex. 5A to Notice of Removal.) Plaintiff also mailed the Original Petition and summons to Defendants Wiley and Hukill at the University Claremore Address. (*Id.*) The return receipts for all three Defendants were signed by a "B. McDaniel." There is no evidence in the record concerning the identity of "B. McDaniel."

The case was subsequently removed to this Court on February 12, 2008. Thereafter, on March 18, 2008, three Alias Summonses were issued to University, Wiley, and Hukill by the Clerk of this Court, ordering said Defendants to respond to the First Amended Petition. Again, the summons for University was addressed to "Roger State University, Attn: Dr. Joe Wiley, President" at the University Claremore Address, and the summonses for Wiley and Hukill were directed to Wiley and Hukill individually at the University Claremore Address. (*See* Doc. 15.) There is no indication in the record that these Alias Summonses were ever served.

On October 12, 2008, Plaintiff filed her Second Amended Complaint, adding Defendants Tom Volturo ("Volturo"), Kristi Kirkes ("Kirkes"), Mark Meadors ("Meadors"), and Michael Turner ("Turner"). Therein, Plaintiff alleges that: (1) University breached its contractual obligations with Plaintiff by terminating her employment ("breach of contract claim"); (2) Wiley and Hukill retaliated against Plaintiff after Plaintiff engaged in protected speech under the First Amendment ("First Amendment claim"); (3) Wiley and Hukill failed to provide Plaintiff procedural due process prior to her termination in violation of 42 U.S.C. § 1983 ("procedural due process claim"); (4)

University wrongfully terminated Plaintiff in violation of Oklahoma public policy ("wrongful termination claim"); (5) Defendants Volturo, Kirkes, Meadors, Turner, Hukill, and Wiley tortiously interfered with Plaintiff's contractual relationship with University ("tortious interference claim"); and (6) University retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964 ("Title VII retaliation claim"). Plaintiff's Second Amended Complaint was personally served on Defendants Volturo, Kirkes, Meadors, and Turner by a process server in January 2009. (*See* Doc. 46.) There is no indication in the record that the Second Amended Complaint was served on any other Defendant.

Defendants now seek dismissal of Plaintiff's suit, arguing the following: (1) Plaintiff's claims against Defendants University, Wiley, and Hukill should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5) ("Rule 12(b)(5)") due to insufficient service of process;[2] (2) Plaintiff's breach of contract, First Amendment, procedural due process, wrongful discharge, and tortious interference claims should be dismissed because they fail to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"); (3) Plaintiff's wrongful discharge and Title VII retaliation claims should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"); (4) Wiley and

---

[2] The record reflects that Defendants Volturo, Kirkes, Meadors, and Turner were served with the Second Amended Complaint subsequent to Defendants' filing of the Motion to Dismiss and these Defendants have not moved independently for dismissal of the claims against them pursuant to Rule 12(b)(5). Therefore, the Court construes Defendants' motion as seeking dismissal of the claims asserted against Defendants University, Wiley, and Hukill for insufficient service of process.

Hukill are entitled to qualified immunity; and (5) Defendants Wiley, Hukill, Volturo, Kirkes, Meadors, and Turner are entitled to sovereign immunity.

## II.     Plaintiff's Claims Against Defendants University, Wiley, and Hukill

Defendants move to dismiss Plaintiff's claims against University, Wiley, and Hukill pursuant to Rules 12(b)(5), 12(b)(6), and 12(b)(1). A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant, making "effective service of process a prerequisite to proceeding further in a case." *Lampe v. Xouth, Inc.*, 952 F.2d 697, 701 (3d Cir. 1992). The Court must therefore decide Defendants' Rule 12(b)(5) motion in the first instance. *See id.*

"A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1353 (3d ed. 2004) [hereinafter *Federal Practice & Procedure*]. Examples of insufficient service include serving the wrong person or serving an individual not authorized to accept service for a defendant. *See* 2 James Wm. Moore, Moore's Federal Practice ¶ 12.22 at 12-54 (3d ed. 1997). "In opposing a motion to dismiss for insufficient service of process, plaintiff bears the burden to make a prima facie case that he has satisfied statutory and due process requirements so as to permit the court to exercise personal jurisdiction over defendants." *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1260 (D. Kan. 2008); *see Federal Practice & Procedure* § 1353 ("The great weight of the case law is to the effect that the party on whose behalf service has been made has the burden of establishing its validity."). "The parties may submit affidavits and other documentary evidence for the court's consideration, and plaintiff is entitled to the benefit of any factual doubt." *Fisher*, 531 F. Supp. at 1260. Where a plaintiff does not meet this burden, a court

4

may dismiss for failure to properly serve. *See Kizzar v. Richardson*, No. Civ 08-1037, 2009 WL 2951061, at *5 (D.N.M. Aug. 14, 2009) (unpublished) (citing *Lasky v. Lansford*, No 03-2070, 2003 WL 22147619. at *1 (10th Cir. Sept. 18, 2003) (unpublished)).

With regard to University, Defendants argue that service of process was legally insufficient because it was not directed to "the University's sole service agent" – namely, "the Secretary of the Board of Regents for the University of Oklahoma." (Mot. to Dismiss 2-3.) In the context of Wiley and Hukill, Defendants argue that service was not properly effected at their residential addresses. In response, Plaintiff does not argue that service upon these Defendants strictly complied with the applicable statutory requirements, apparently conceding the fact that the statutory requisites were not followed.[3] Instead, Plaintiff's argument relies on the fact that the service in question "comports with due process" and should therefore be upheld by the Court.

Plaintiff is correct that strict compliance with the Oklahoma statutory scheme is not required for service to be proper. *See Graff v. Kelly*, 814 P.2d 489, 495 (Okla. 1991).[4] Rather, "substantial compliance" is sufficient. *See id.* ("We conclude and so hold that the Oklahoma Pleading Code requires *substantial compliance* in order for the trial court to have jurisdiction over the person of the defendant."). "To determine whether substantial compliance has occurred, the court must consider the circumstances and 'determine whether the found departure offends the standards of due process and thus may be deemed to have deprived a party of its fundamental right to notice.'" *Shaffer v. Skechers, USA, Inc.*, No. CIV-09-167-D, 2009 WL 3837408, at *2 (W.D. Okla. Nov. 16, 2009)

---

[3] The Court therefore finds unnecessary an analysis as to whether service complied with the statutory requirements under Oklahoma law.

[4] Federal Rule of Civil Procedure 4(e)(1) provides that service may be accomplished, *inter alia*, by complying with the applicable state statutory procedure.

(unpublished) (citing *Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794, 798 (10th Cir. 2008) and *Shamblin v. Beasley*, 967 P.2d 1200, 1209 (Okla. 1999)). "'The adopted test requires that under *all the circumstances present in a case* there be a *reasonable probability* the service of process employed apprized its recipient of the plaintiff's pressed demands and the result attendant to default.'" *Hukill*, 542 F.3d at 799 (quoting *Vance v. Fed. Nat'l Mortgage Ass'n*, 988 P.2d 1275, 1279-80 (Okla. 1999)). In the case of a third party's receipt of notice, there must be a "reasonable probability that the person who was not individually served [nonetheless] will receive actual notice from one by whom service was accepted." *Shamblin*, 967 P.2d at 1209.

In applying this standard to the facts at hand, the Court finds the Tenth Circuit's decision in *Hukill* instructive. There, the Tenth Circuit reversed the district court's finding that service of process substantially complied with the requirements under Oklahoma law. *Hukill*, 542 F.3d at 802. In *Hukill*, the plaintiff attempted service by certified mail and "L. Vollintine" signed the return receipts in question. The parties agreed that "L. Vollintine" was not an "employee, officer, board member, or director of, or an agent authorized to receive" service on behalf of the defendants. In assessing whether such service substantially complied with the statutory requirements for service of process, the Tenth Circuit found that "the Oklahoma Supreme Court would hold that a plaintiff fails to substantially comply with a service statute specifying who is authorized to accept or refuse service on behalf of the defendant, when service is accepted or refused by an unauthorized person." *Hukill*, 542 F.3d at 800. Because the attempted service in *Hukill* "was accepted by an unauthorized person," the court held that "it did not substantially comply with the statute and was invalid." *Id.* at 802. Further, the Tenth Circuit noted that defendants' actual notice of the suit was not determinative based on the Oklahoma Supreme Court decisions of *Graff v. Kelly*, 814 P.2d 489, 495

(Okla. 1991) and *Ferguson Enterprises, Incorporated v. H. Webb Enterprises, Incorporated*, 13 P.3d 480 (Okla. 2000). *Id.*

As noted above, the return receipts at issue in this case were signed by "B. McDaniel." As opposed to *Hukill*, where the identity of the signatory was known, there is no evidence in the record identifying B. McDaniel. Although Plaintiff seems to conjure a guess that B. McDaniel is "[a]pparently a mail clerk," (Resp. to Defs.' Mot. to Dismiss 5), Plaintiff provides no support for this assertion. Because Defendants have moved pursuant to Rule 12(b)(5), Plaintiff bears the burden of proving valid service of process, *see Fisher*, 531 F. Supp. 2d at 1260, including providing information as to the identity of the signatory of the summonses at issue, *see Lampe*, 952 F.2d at 701 (granting Rule 12(b)(5) motion when "*[p]laintiff* . . . offered no proof that the signatures [on the return receipts] belong[ed] to defendant's authorized agents") (emphasis added); *Weast v. Family Dollar Distribution Ctr.*, No. 3:09CV00196-JMM, 2010 WL 1956612, at *1 (E.D. Ark. May 14, 2010) (unpublished) (granting defendant's motion to dismiss when "*[p]laintiff* offer[ed] no evidence" that signatory of summons at issue was authorized to accept service on behalf of defendant) (emphasis added). Without any information in the record regarding B. McDaniel, the Court is unable to find that this individual was authorized to accept service on behalf of Defendants University, Wiley, or Hukill or that there was a "reasonable probability" that Defendants would have received notice from B. McDaniel. The Court therefore finds the service of process defective with regard to Defendants University, Wiley, and Hukill.

Because Plaintiff has not met her burden of establishing that Defendants University, Wiley, and Hukill were properly served and did not attempt service of any amended pleading on said Defendants, Plaintiff failed to effect proper service on these Defendants within the 120-day time

7

limit established by Federal Rule of Civil Procedure 4(m) ("Rule 4(m)"). (*See* Pl.'s Resp. to Defs.' Mot. to Dismiss 6-7 (acknowledging that the 120-day time period has "r[u]n as to Defendants Wiley, Hukill, and [U]niversity").) The Court must therefore dismiss Plaintiff's claims against Defendants University, Wiley, and Hukill without prejudice unless it finds that Plaintiff is entitled to a mandatory or permissive extension of this deadline. *See* Fed R. Civ. P. 4(m); *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995) (discussing mandatory and permissive extensions). Plaintiff, however, has failed to provide any argument: (1) showing the requisite "good cause" for a mandatory extension; or (2) addressing the factors warranting a permissive extension, *see id.* (outlining said factors). Absent such argument, the Court finds an extension unwarranted in this case and dismisses Plaintiff's claims against Defendants University, Wiley, and Hukill without prejudice. *See Womble v. Salt Lake City Corp.*, No. 03-4107, 2003 WL 22925276 at *1 (10th Cir. Dec. 11, 2003) (unpublished) (affirming district court's dismissal of plaintiff's complaint pursuant to Rule 4(m) when plaintiff failed to demonstrate good cause for mandatory extension or provide reasons why the court should permissively extend the 120-day period for service).[5]

### III. Plaintiff's Tortious Interference Claim Against Defendants Volturo, Kirkes, Meadors, and Turner

Defendants argue that Plaintiff's tortious interference claim should be dismissed pursuant to Rule 12(b)(6) because: (1) Defendants Volturo, Kirkes, Meadors, and Turner enjoy sovereign immunity from suit; and (2) Plaintiff fails to state a claim upon which relief can be granted.

---

[5] Because the Court finds dismissal without prejudice proper pursuant to Rule 12(b)(5), the Court need not treat Defendants' motions to dismiss the claims against University, Wiley, and Hukill pursuant to Rules 12(b)(6) and 12(b)(1).

### A.     Rule 12(b)(6) Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must construe the allegations in the complaint in the light most favorable to the plaintiff and determine whether the plaintiff has stated a claim upon which relief may be granted. *See Buckley Constr., Inc. v. Shawnee Civil and Cultural Dev. Auth.*, 933 F.2d 853, 855 (10th Cir. 1991). The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544)). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 127 S. Ct. at 1974). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177.

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual

grounds of the claim against them." *Id.* at 1248. In addition, the Tenth Circuit has stated that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context" and that whether a defendant receives fair notice "depends on the type of case." *Id.*

### B. Sovereign Immunity

Defendants maintain that as employees of University, Defendants Volturo, Kirkes, Meadors, and Turner are state employees and therefore immune from suit pursuant to the Governmental Tort Claims Act. In response, Plaintiff argues the doctrine of sovereign immunity is inapplicable because Defendants Volturo, Kirkes, Meadors, and Turner acted outside the scope of their employment and are named in their individual capacities.

The Court finds Plaintiff's position well-founded. "The Governmental Tort Claims Act, [Okla. Stat. tit. 51, §§ 151 et seq.], makes a distinction between a government employee acting within the scope of employment and one who was not." *Pellegrino v. State ex rel. Cameron Univ. ex rel. Bd. of Regents of State*, 63 P.3d 535, 537 (Okla. 2003) (internal citations omitted). Specifically, the concept of "scope of employment is . . . tied to whether the employee or the government entity may be liable for a particular act." *Id.* An "employee acting within the scope of employment if relieved from private (individual) liability for tortious conduct, but when an employee acts outside the scope of employment the political subdivision is relieved from liability." *Id.*

In this case, Plaintiff has alleged that Defendants Volturo, Kirkes, Meadors and Turner acted outside the scope of their employment, as the Second Amended Complaint specifically claims that such Defendants acted "maliciously and bad faith," Second Am. Compl. ¶ 36. *See Pellegrino*, 63

P.3d at 537 ("An act of the employee is not in the scope of employment if the employee acted maliciously or in bad faith."); *Bjorklund v. Miller*, No. 08-CV-424-TCK-PJC, 2009 WL 2901214, at *10 (N.D. Okla. Sept. 3, 2009) (unpublished) (finding plaintiff's allegations were "outside the scope of employment," and therefore insufficient for an "official capacity claim," when complaint alleged malicious conduct). While the governmental entity at issue – namely, the University – cannot be liable for these acts, *see Pellegrino*, 63 P.3d at 537 (noting that governmental entity is relieved from liability when employee acts outside scope of employment), it was proper for Plaintiff to assert such claims against Defendants in their individual capacities. *See Koch v. City of Del City*, No. CIV-07-371-D, 2010 WL 1329819, at *11 (W.D. Okla. March 29, 2010) (unpublished) ("If [defendant] was acting outside the scope of employment, [p]laintiff may bring a tort claim against him individually, but in this situation, 'the [Governmental Tort Claims Act] does not apply.'") (citing *Speight v. Presley*, 203 P.3d 173, 176 (Okla. 2008)); *see also Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1297 (10th Cir. 2008) ("Where, however, the plaintiffs' suit seeks money damages from the officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, sovereign immunity does not bar the suit so long as the relief is sought not from the [sovereign's] treasury but from the officer personally.") (discussing the general principles governing immunity of federal and state sovereigns) (internal quotations omitted). Accordingly, the Court declines to dismiss Plaintiff's tortious interference claim against Defendants Volturo, Kirkes, Meadors, and Turner on the basis of sovereign immunity.

### C. Sufficiency of Plaintiff's Claim

To establish a claim for tortious interference with contract, Plaintiff must allege and prove: (1) interference with an existing contract; (2) interference that was malicious and wrongful; (3) interference that was unjustified, unprivileged, or inexcusable; and (4) damage proximately caused by the interference. *Wilspec Techs., Inc. v. DunAn Holding Group Co. Ltd.*, 204 P.3d 69, 74 (Okla.

2009). Defendants argue that Plaintiff's tortious interference claim fails to state a claim upon which relief can be granted because: (1) there is no contract at issue; and (2) Plaintiff fails to allege that Defendants Volturo, Kirkes, Meadors, and Turner "encouraged a breach of the alleged contract or that any contract was breached as a result of" the acts of these Defendants.[6]

Defendants' first argument fails because Oklahoma recognizes tortious interference with prospective economic advantage, as well as tortious interference with an actual contractual relationship. *See Gonzalez v. Sessom*, 137 P.3d 1245, 1249 (Okla. Civ. App. 2006); *McNickle v. Phillips Petroleum Co.*, 23 P.3d 949, 953-54 (Okla. Civ. App. 2001); *see also Harman v. Okla. ex. rel. N. Okla. Bd. of Regents*, No 07-327, 2007 WL 1674205, at *3 (W.D. Okla. June 7, 2007) (unpublished) (concluding that "[a]lthough there apparently is no Oklahoma Supreme Court authority directly recognizing [a tortious interference with prospective economic advantage] claim in the at-will employment context . . . lower Oklahoma courts have recognized the cause of action without hesitation"). Thus, an actual contract is not a requirement for recovery. Further, Plaintiff's Second Amended Complain, which must be accepted as true for the purposes of Defendants' Rule 12(b)(6) motion, alleges that a contractual relationship exists. (*See* Second Am. Compl. ¶ 12).

However, the Court finds merit in Defendants' second argument. Specifically, a review of Plaintiff's Second Amended Complaint demonstrates that Plaintiff fails to allege what actions Defendants Volturo, Kirkes, Meadors, and Turner took that tortiously interfered with her contract with University. Instead, Plaintiff summarily alleges that these Defendants "tortiously interfered with Plaintiff's contractual relationship by acting maliciously and in bad faith and contrary to the

---

[6] Defendants also argue that Plaintiff has failed to allege that Defendants Volturo, Kirkes, Meadors, and Turner acted outside the scope of their state employment. As discussed in Section III.B, the Court finds this position misplaced.

interests of [University] by terminating her" and did so because of a "desire to obscure their unlawful conduct and suppress Plaintiff's rights and protect their own employment." (Second Am. Compl. ¶ 36.) Notably absent from Plaintiff's Second Amended Complaint are any facts regarding the nature of Defendants' allegedly tortious conduct. Although Plaintiff need not provide an overly detailed account of such actions at the pleading stage, some factual allegations are necessary to apprise Defendants of the nature of Plaintiff's claim. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (noting that, when considering the sufficiency of a complaint, a court considers only "well pleaded" allegations and conclusory allegations not supported by factual contentions are insufficient to state a claim on which relief can be granted); *see also Whitney v. State of N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (stating that a court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf"); *cf. Pre-Paid Legal Servs., Inc. v. Kane*, No CIV-07-366-FHS, 2008 WL 640351, at *3 (E.D. Okla. March 5, 2008) (unpublished) (finding plaintiff's tortious interference claim survived 12(b)(6) motion when complaint included facts outlining representations made by defendants to third party in an effort to interfere with contract between third party and plaintiff). The Court therefore finds that Plaintiff has failed to allege sufficient facts from which the Court can conclude she has a plausible tortious interference claim against Defendants Volturo, Kirkes, Meadors, and Turner.

**IV.   Conclusion**

For the reasons stated herein, Defendants' Motion to Dismiss (Doc. 34) is GRANTED. Specifically, all claims against Defendants University, Wiley, and Hukill are dismissed without prejudice pursuant to Rule 12(b)(5). The tortious interference claim asserted against Defendants

Volturo, Kirkes, Meadors, and Turner is dismissed with prejudice pursuant to Rule 12(b)(6). This Order terminates the litigation.

**IT IS SO ORDERED this 24th day of June, 2010.**

**TERENCE C. KERN**
**United States District Judge**